FILED ___ ENTERED  ___ RECEIVED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

FEB 10 2009

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| United States of American for the use and benefit of CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., a foreign corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MT. GRANT ELECTRIC, an unknown entity; DAY & ZIMMERMANN HAWTHORNE CORPORATION; a Delaware corporation; and AMERICAN CONTRACTORS INDEMNITY CO., a surety,<br><br>　　　　　Defendants. | 3:06-cv-00309-BES-RAM<br><br>**ORDER** |
| AMERICAN CONTRACTORS INDEMNITY COMPANY,<br><br>　　　　　Crossclaimant,<br><br>　　v.<br><br>MT. GRANT ELECTRIC,<br><br>　　　　　Crossdefendant. | |
| AMERICAN CONTRACTORS INDEMNITY COMPANY,<br><br>　　　　　Third Party Plaintiff,<br><br>　　v.<br><br>MERLIN J. HALL, an individual; KATHY THYNE, an individual; DOES I through X, inclusive,<br><br>　　　　　Third Party Defendants. | |

Currently before the Court is Defendant/Crossclaimant/Third Party Plaintiff American Contractors Indemnity Company's ("ACIC") Motion for Summary Judgment (#113) filed on May 27, 2008. Defendant/Crossdefendant Mt. Grant Electric ("Mt. Grant") and Third Party Defendants Merlin J. Hall and Kathy Thyne (collectively referred to herein as the "Mt. Grant Defendants") filed an Opposition to American Contractors Indemnity Company's Motion for Summary Judgment (#116) on June 25, 2008, and ACIC filed a Reply (#117) on July 9, 2008.

## BACKGROUND

This case involves a claim for indemnification brought by ACIC against the Mt. Grant Defendants.[1] On April 12, 2005, Mt. Grant submitted an electrical construction bid to Day & Zimmerman Hawthorne Corporation ("DZHC") to perform an electrical job at the United States army base in Hawthorne, Nevada. (Opposition to ACIC's Motion for Summary Judgment (#116) at 2). DZHC accepted the Mt. Grant bid for the project. However, because the army base was owned by the federal government, Mt. Grant was required to obtain both a payment bond and a performance bond before it could be awarded the contract to perform the work.[2] As a result of this requirement, Mt. Grant contacted ACIC to obtain the necessary bonds, and ACIC issued the bonds as surety for Mt. Grant. Id. at 3. As part of the transaction for the bonds, on June 13, 2005, ACIC faxed a General Indemnity Agreement ("GIA") to Mt. Grant. Id. Under the GIA, Mt. Grant agreed to "indemnify, defend and hold ACIC harmless for all losses and costs, including attorneys' fees and costs." (Motion for Summary Judgment (#113) at 3).

According to the Mt. Grant Defendants, at the time they executed the GIA, they were under a time constraint from DZHC. The Mt. Grant Defendants state that "DZHC was growing extremely impatient, and had indicated to Mt. Grant that it would cancel the contract unless

---

[1] The initial complaint was filed in this matter on May 9, 2006, by Consolidated Electrical Distributors ("CED") against various defendants. (Complaint (#1)). In April 2008 a settlement was reached among certain parties and a Stipulation and Order of Dismissal (#114) was entered on June 9, 2008. The indemnification claim by ACIC against the Mt. Grant Defendants is the only cause of action remaining in the case.

[2] 40 U.S.C. § 3133(b) provides that before any contract is awarded "for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government" a performance bond and a payment bond.

2

Mt. Grant immediately secured the bonds." (Opposition to ACIC's Motion to Dismiss (#116) at 3). As a result, the owner of Mt. Grant, Merlin J. Hall ("Hall") "quickly signed" the GIA "without reading it, had it notarized, and Fed Ex'd" the GIA back to ACIC.[3] Id. Hall had obtained bonds in the past during his ten years in the electrical business; however, "he had never seen or been required to enter into an indemnity agreement." Id. According to the Mt. Grant Defendants, as a result of Hall's "lack of experience," Hall believed that the GIA from ACIC "was similar to an insurance agreement," and that the GIA "would obligate the surety to defend its customers in the event of a dispute and that it would also require the surety to protect its customers' bond rating." Id.

On June 20, 2005, Mt. Grant began work on the project for DZHC. However, because of a problem with the electrical wire, work was halted in November 2005. Id. at 4. As a result of this problem, "disputes arose as to who caused the damage to the wire and who was responsible for replacing the defective wire." Id. Although Mt. Grant remained on the project hoping to continue work, in June 2006, Mt. Grant "left the DZHC job site to find other jobs." Id. at 6. On November 27, 2006, DZHC notified ACIC that Mt. Grant's contract with DZHC for work at the army base was cancelled. Id.

On May 9, 2006, CED asserted a claim against the payment bond issued to Mt. Grant by ACIC after Mt. Grant failed to issue payment for materials and labor on the DZHC project.[4] (Motion for Summary Judgment (#113) at 4). DZHC also asserted a claim against the performance bond issued by ACIC to Mt. Grant after DZHC terminated its contract with Mt. Grant. According to ACIC, in response to the claims submitted by CED and DZHC, ACIC sought to enforce the GIA against Mt. Grant including the indemnity clause. Id.

The duty to indemnify in the GIA states that "[i]n consideration of the execution and

---

[3] ACIC faxed the GIA to the Mt. Grant Defendants on June 13, 2005. (Opposition to ACIC's Motion for Summary Judgment (#116) at Exhibit A, p. 2). DZHC had indicated to Hall that it would cancel the contract unless Mt. Grant secured the bonds or a letter of intent from ACIC by June 20, 2005. Id. Although Hall may have felt pressured to sign the GIA immediately, he had several days to read the GIA or consult with someone regarding the meaning of its terms before signing it.

[4] CED had supplied Mt. Grant with wire for the project. (Opposition to ACIC's Motion for Summary Judgment (#116) at 3).

delivery by [ACIC] of a Bond or any Bonds on behalf of [Mt. Grant], [Mt. Grant] agrees to indemnify and hold [ACIC] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature" which arise by reason of "the execution by [ACIC] of any Bond on behalf of [Mt. Grant] . . . ." Id. at Exhibit 2. The GIA also contains a provision that in furtherance of such indemnity, ACIC "shall have the right in its sole and absolute discretion to determine whether any claims under any Bond or Bonds shall be paid, compromised, adjusted, defended, prosecuted or appealed." Id. at Exhibit 2. Moreover, the provision states that ACIC "shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expenses for investigative, accounting, engineering and legal services." Id. at Exhibit 2.

As noted in the foregoing, although the other claims in this case have been settled, the indemnification claim by ACIC against the Mt. Grant Defendants is still pending. ACIC argues that it is entitled to judgment as a matter of law on this claim based on the indemnity provision in the GIA. (Motion for Summary Judgment (#113) at 2). Specifically, ACIC states that the Mt. Grant Defendants "executed the GIA in consideration for ACIC issuing two bonds as surety for Mt. Grant Electric." Id. Moreover, "[t]he GIA unambiguously sets forth that [the Mt. Grant Defendants] are liable to ACIC for any and all losses, including attorneys' fees and costs incurred by ACIC in consequence of ACIC's execution of the bonds." Id. Thus, because the Mt. Grant Defendants "are clearly contractually obligated to indemnify ACIC pursuant to the GIA," ACIC argues that it is entitled to summary judgment.

In response, the Mt. Grant Defendants argue that the indemnity provision should not be enforced against them because (1) the GIA is an adhesion contract; (2) the GIA is unconscionable; and (3) justice and equity require that the GIA be set aside. (Opposition to ACIC's Motion for Summary Judgment (#116)).

**ANALYSIS**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(c). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998).

Any dispute regarding a material issue of fact must be genuine—the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." Id. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978). The evidence must be significantly probative, and cannot be merely colorable. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In a contract case, "[s]ummary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." Kassbaum v. Steppenwolf Prod., Inc., 236 F.3d 487, 491 (9th Cir. 2000). Under Nevada law, a contract is clear and unambiguous if it "is not reasonably susceptible to more than one interpretation." Univ. of Nevada, Reno v. Stacey, 116 Nev. 428, 431, 997 P.2d 812, 814 (Nev. 2000).

Indemnity agreements by a surety seeking reimbursement for payments made on a bond or for costs incurred in consequence of execution of a bond "have been consistently upheld as valid and enforceable." Employers Ins. of Wausau v. Able Green, Inc., 749 F.Supp. 1100, 1103 (S.D.Fla 1990). Nevada law has upheld indemnity agreements in the surety context. See Transamerica Premier Ins. Co. v. Nelson, 110 Nev. 951, 878 P.2d 314 (Nev. 1994)(stating that a GIA holding a surety harmless for all expenses consequential to the

issuance of a bond is an enforceable agreement); see also Ins. Co. of the West v. Gibson Tile Company, Inc., 122 Nev. 455, 134 P.3d 698 (Nev. 2006)(holding that a surety has the right to pursue its indemnification claims under the plain terms of a general indemnity agreement).[5] In their response to ACIC's motion for summary judgment, the Mt. Grant Defendants do not argue that indemnity agreements in general are unenforceable. Rather, as noted, the Mt. Grant Defendants argue that the GIA should not be enforced against them because it is an adhesion contract, is unconscionable, and should be set aside under principles of equity and justice.

I. Adhesion Contracts

Nevada law defines an adhesion contract as a "standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." Obstetrics and Gynecologists v. Pepper, 101 Nev. 105, 107, 693 P.2d 1259, 1260 (Nev. 1985). According to the Nevada Supreme Court, the "distinctive feature of an adhesion contract is that the weaker party has no choice as to its terms." Id. However, an "adhesion contract need not be unenforceable if it falls within the reasonable expectations of the weaker or 'adhering' party and is not unduly oppressive." Id.

Here, the Mt. Grant Defendants argue that the GIA is an adhesion contract because they were required to enter into it before they could obtain a bond "which, in turn, was a prerequisite to obtaining the contract with DZHC." (Opposition to ACIC's Motion for Summary Judgment (#116) at 10). Moreover, the Mt. Grant Defendants state that "[t]here is no evidence" that they "knowingly consented to the terms" of the GIA. Id. Instead, according to the Mt. Grant Defendants "the only evidence establishes that they signed" the GIA. Id. In response, ACIC states that the Mt. Grant Defendants cannot be relieved of "contractual obligations which they freely assumed" as a business entity engaged in a business

---

[5] In upholding general indemnity agreements, the Nevada Supreme Court has stated that a surety is entitled to indemnification because "sureties, unlike insurers, profit solely from the premiums they collect. Indemnification rights guard against potential losses, help reduce the surety's risk, and keep premiums relatively low." Ins. Co. of the West, 134 P.3d at 701.

6

transaction. (Reply (#117) at 4). Moreover, ACIC notes that the Mt. Grant Defendants could have obtained the "requisite bonds from any number of surety companies," and that just because the GIA was a standardized contract does not mean that it could not have been modified to meet the intent of the parties. Id.

In this matter, the Court finds that the GIA is not an adhesion contract. The Mt. Grant Defendants have not provided any evidence that they did not have an opportunity to bargain with ACIC over the terms of the agreement or that they were required to enter into the GIA on a "take it or leave it basis."[6] Notably, Mt. Grant is a business entity and the Mt. Grant Defendants concede that Hall "had obtained bonds in the past during his ten years in the electrical business." (Opposition to ACIC's Motion for Summary Judgment (#116) at 3). The fact that Hall only had "a high school education" and "had never seen an indemnity agreement" does not turn the GIA into an adhesion contract. As a result, the GIA cannot be set aside based on this argument.

## II. Unconscionability

The Mt. Grant Defendants also argue that the GIA cannot be enforced against them because it was unconscionable. (Opposition to ACIC's Motion for Summary Judgment (#116) at 10). According to the Mt. Grant Defendants, the GIA is both procedurally and substantively unconscionable because it is an adhesion contract and because ACIC retained the sole discretion to determine whether any claims should be paid under the bond. Id. at 11. In response, ACIC notes that similar indemnity agreements have been routinely enforced in both Nevada and other jurisdictions. (Reply (#117) at 5). In addition, ACIC argues that the GIA is not an adhesion contract and that it is also not substantively unconscionable. In this regard, ACIC states that "[a]lthough the GIA does provide broad coverage to ACIC, the terms of the GIA are not oppressive." Id. ACIC also states that the right to settle clause noted by the Mt. Grant Defendants is common in indemnity agreements and routinely enforced by courts.

---

[6] The Mt. Grant Defendants argue that they entered into the GIA on a take it or leave it basis because ACIC faxed the agreement to them "only days before a June 20th deadline imposed by DZHC." (Opposition to ACIC's Motion for Summary Judgment (#116) at 10). As a result, the Mt. Grant Defendants state that Hall either signed the GIA "or did not obtain the bond." Id. However, this deadline was imposed by DZHC and not ACIC. Moreover, such an assertion does not provide any evidence that the terms of the GIA would not be negotiated by ACIC.

7

Nevada law provides that a court may invalidate an unconscionable contract or contract clause. D.R. Horton, Inc. v. Green, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (Nev. 2004). "Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion and refuse to enforce a . . . clause as unconscionable." Id. (quoting Burch v. Dist. Ct., 118 Nev. 438, 442, 49 P.3d 647, 650 (Nev. 2002)). A clause is "procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." Id. at 554, 49 P.3d at 1162. "Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." Id. (citing Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 249 (1995)(O'Conner, J., concurring)). Substantive unconscionability, on the other hand, "focuses on the one-sidedness of the contract terms." Id.

In this case, the Court finds that the GIA is neither procedurally nor substantively unconscionable. As noted in the foregoing, the GIA is not an adhesion contract. Moreover, the Mt. Grant Defendants have not argued that the terms of the GIA were not readily ascertainable upon a review of the contract. Rather, the Mt. Grant Defendants concede that they simply did not read the terms of the agreement. However, the Mt. Grant Defendants' failure to read the agreement does not make the terms of the agreement unconscionable.[7] In addition, the GIA is not substantively unconscionable. Although ACIC concedes that the GIA provides it with broad coverage, the Mt. Grant Defendants have not argued that the GIA was entirely one-sided. Moreover, similar settlement clauses as the one found in the GIA have been repeatedly upheld by courts. See Employers Ins. of Wausau, 749 F.Supp. at 1100.

### III. Equity and Justice

Finally, the Mt. Grant Defendants argue that principles of equity and justice require that the GIA be set aside. (Opposition to ACIC's Motion for Summary Judgment (#116) at 11).

---

[7] According to the Ninth Circuit, "a party who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it." Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501, 1504 (9th Cir. 1984). Moreover, as noted in the foregoing, the Mt. Grant Defendants had several days to read the GIA prior to signing it.

8

1. The Mt. Grant Defendants note that soon after beginning work "Hall found himself enmeshed in a chain of events over which he had no control, for which he bore no fault, and which ultimately forced him, for the first time, to leave a project unfinished." Id. The Mt. Grant Defendants further state that while they "are in no way suggesting that ACIC has been negligent and should not recover as a result, the Mt. Grant Defendants are likewise not at fault for the events that have occurred and the resulting financial fate that has befallen them." Id. at 12. As a result, the Mt. Grant Defendants argue that the GIA be set aside.

Although the Court recognizes the hardship placed on the Mt. Grant Defendants by the events that occurred during the DZHC project, the Court cannot set aside a contract "merely because... performance becomes more difficult or expensive than anticipated by the parties." Citrone v. SNJ Assoc., 682 A.2d 92, 95 (R.I. 1996). As noted by the Mt. Grant Defendants, ACIC was not at fault for any of the events that occurred. Rather, the entirety of ACIC's obligation arose from its undertaking on behalf of the Mt. Grant Defendants. As a result, this Court cannot set aside the agreement Mt. Grant executed with ACIC. See Transamerica, 110 Nev. at 956, 878 P.2d at 317 (stating that a similar GIA entitled the surety to a full recovery of expenses incurred in defending the action on a bond because "in the case of a surety sued on a bond, the surety generally has no culpability whatsoever, and the entirety of its obligations arises from its undertaking on behalf of the indemnitor and principal obligor").

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that ACIC's Motion for Summary Judgment (#113) is GRANTED.

The Clerk of the Court shall enter judgment accordingly.

Dated this 10th day of February, 2009.

_____
United States District Judge